AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V.

JAMES BARSOUM

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 1:05M144A

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about Jan. 6, 2004 to Mar. 6, 2005 in ____ county, in the ____ District of RHODE ISLAND defendant(s) did, (Track Statutory Language of Offense)

cause the misbranding of a drug; fraudulently receive a prescription drug Oxycodone, a schedule II controlled substance; and execute a scheme to defraud a health care benefit program

in violation of Title 21 United States Code, Section(s) 331(k); 843 and 18 U.S.C. Section 1347.

I further state that I am a(n) SPECIAL AGENT, FDA (Official Title) and that this complaint is based on the following facts:

See Attached Affidavit of Special Agent Jason Simonian, FDA

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Jason Simonian
Signature of Complainant

Sworn to before me and subscribed in my presence,

11/28/05 at Providence, Rhode Island

Date — City and State

United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

4

I, Jason Simonian, being duly deposed and sworn, say:

1. I am a Special Agent with the United States Food and Drug Administration's Office of Criminal Investigations (FDA-OCI), and have been so employed since September of 1996. I was previously employed as a Special Agent of the United States Department of Labor for approximately eight years. As an FDA-OCI Special Agent, I primarily conduct investigations into suspected violations of the Federal Food, Drug and Cosmetic Act. I have also been trained by the FDA-OCI in those various means and methods by which illegal drug diverters obtain, possess, transport, and distribute prescription drugs, including Oxycodone a schedule II controlled substance. I am currently investigating reports regarding the following illegal activity: (1) causing the misbranding of a drug, in violation of 21 U.S.C. § 331(k); (2) the fraudulent receipt of Oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. § 843; and, (3) the defrauding of a health care benefit program in violation of 18 U.S.C. § 1347.

2. I have been assisted in this investigation by other agents assigned to OCI, Special Agents of the United States Drug Enforcement Administration and Inspectors of the United States Postal Inspection Service.

3. I base the information in this affidavit on my personal investigation and observations, training, background, and experience, information gleaned from documents and received from other law enforcement officers, witnesses, and statements made by James Barsoum as described below.

4. As detailed below, I respectfully submit that there is probable cause to believe that James Barsoum has violated 21 U.S.C. §§ 331(k) and 843 and 18 U.S.C. § 1347.

5. This affidavit does not contain every fact known to me with respect to this investigation, rather it contains those facts which I believe to be necessary to establish probable cause for issuance of an arrest warrant for James Barsoum. This affidavit is offered in support of an arrest warrant and criminal complaint against James Barsoum, with a date of birth of January 26, 1969.

## STATUTORY BACKGROUND

6. The Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. 301 et seq. regulates the interstate distribution of drugs. The statute is intended to ensure, inter alia, that drugs manufactured and distributed within the United States are neither adulterated nor misbranded. This includes ensuring that drugs are safely manufactured, processed, and made from appropriate ingredients, and that all labeling and packaging is truthful, informative, and not deceptive. Pursuant to 21 U.S.C. § 331(k), it is unlawful to do or cause any act with respect to a drug, if the act is done while the drug is held for sale after shipment in interstate commerce, and results in the drug being misbranded. The act of dispensing a prescription drug without a valid prescription causes the drug to be misbranded while held for sale pursuant to 21 U.S.C. § 353 (b)(1).

7. With respect to the fraudulent receipt of Oxycodone, a schedule II controlled substance, 21 U.S.C. § 843(a)(3) prohibits a person from knowingly and intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.

8. With respect to health care fraud, 18 U.S.C. § 1347 prohibits a person from knowingly and willfully executing, or attempting to execute a scheme or artifice either

(1) to defraud any health care benefit program; or (2) to obtain, by means of false and fraudulent pretenses, representations, or promises, any money or property owned by, or under the custody or control of any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services. 18 U.S.C. § 1347.

9. A health care benefit program is any public or private plan or contract (such as a health insurance company), affecting commerce, under which any medical benefit, item or service is provided to any individual. 18 U.S.C. § 24.

**Facts Establishing Probable Cause**

10. In April of 2005, I met with representatives of Blue Cross/Blue Shield of Rhode Island (hereafter referred to as BC/BS), a large-scale provider of medical insurance. I was advised by BC/BS that Rachel Araz, a medical insurance subscriber, contacted BC/BS and reported that she had received a letter from Pharmacare Corporation. Pharmacare is a company that is contracted by BC/BS to administer the prescription benefit plan for BC/BS.

11. The letter from Pharmacare advised Araz that she had a prescription filled for a brand name of Oxycodone (OxyContin) and requested that, in the future, Araz obtain a generic version of Oxycodone. Subsequent to receiving the letter from Pharmacare, Araz contacted BC/BS and advised that she has never obtained OxyContin and believed that someone must have fraudulently obtained the drug using her identity. BC/BS has provided me with a prescription profile for Rachel Araz. In summary, that document provided that between February 20, 2004, and February 23, 2005, BC/BS, via Pharmacare, paid for thirteen prescriptions of OxyContin for subscriber Rachel Araz at a total cost of $8,940.04.

12. I have reviewed reports and other related documentation from the Ridgewood, New Jersey, Police Department that reveal that James Barsoum was arrested on February 24, 2005, for his involvement in passing and forging prescriptions for OxyContin. In a written statement provided to Detective Douglas Williams of the Ridgewood, New Jersey Police Department, Barsoum stated, in part:

a. "about a year ago (on or about February 24, 2004), a doctor, Dr. A. Louis Mariorenzi, wrote me prescription for OxyContin and before I got it filled I made a copy of it. I then forged the prescriptions that were passed in Ridgewood." (Dr. A. Louis Mariorenzi is a licensed medical practitioner within the State of Rhode Island and is part of a practice named Orthopedic Associates, Inc., located at 725 Reservoir Avenue, Cranston, RI. Dr. Michael P. Mariorenzi and Louis J. Mariorenzi, also practice medicine at Orthopedic Associates, Inc. and there respective names appear on the prescriptions issued from that practice);

b. on February 8, 2005, Barsoum submitted a forged prescription to an employee of Harding Pharmacy, located at 305 East Ridgewood Avenue, Ridgewood, New Jersey to be filled. In order to pay for the prescription, Barsoum provided information about Rachel Araz's health benefit program, so the cost of the OxyContin would be charged to Araz's insurance. Barsoum admitted to receiving sixty, eighty milligram (80mg) tablets of OxyContin, and causing the cost of the prescription to be charged to Rachel Araz's health insurance, BC/BS on February 8, 2005;[1]

---

[1] In the course of my investigation, I have verified that the prescription was charged to BC/BS. I have compared a profile of charges to BC/BS under the name of Rachel Araz and it appears that $660.10 was charged on February 8, 2005, to BC/BS for the 80mg. prescription that Barsoum admitted he submitted to BC/BS.

c. on February 23, 2005, Barsoum submitted a forged prescription for ninety, eighty (80) milligram tablets of OxyContin to an employee of Harding Pharmacy to be filled;

d. on February 24, 2005, Barsoum submitted a forged prescription in the name of Julie Ayaz an employee of Town and Country Pharmacy, located in Ridgewood, New Jersey;

13. In May of 2005, I went to the office of A. Louis Mariorenzi, M.D., at Orthopedic Associates, Inc., in Cranston, Rhode Island. At the office, I was provided with copies of documents contained within a file regarding suspected fraudulent prescriptions. According to a registered nurse employed by that office, she maintained the file as a result of inquiries that she had received from various law enforcement officials regarding the activities of James Barsoum.

14. The file presented to me by the registered nurse appeared to contain forged prescriptions in the names of "Julianne Barsoum," "David A. Pearsall," "Antone Jabaly" (believed to be Antoine Jabaly), "Issa Azar," and "Julie Azar-Ayaz." I have compared samples of authentic voided prescriptions obtained from Orthopedic Associates, Inc with the forgeries obtained from that file and have determined the following.

15. The authentic prescriptions display the address 725 Reservoir Avenue; a suite number of **101**; and a telephone number of **(401) 944-3800.**

16. Several, but not all, of the forged prescriptions, appear to have been altered to exclude much of the authentic information and, instead, contain a different address and telephone number. The forged prescriptions contain the address of 725 Reservoir Avenue, Suite **201**, Cranston, RI and telephone number **(401) 749-4810**, neither of which

are the address or phone number of Orthopedic Associates Inc. or Dr. Mariorenzi. However, they contain what appears to be a forged signature of Dr. Mariorenzi.

17. I know based upon my training and experience that those individuals seeking to obtain authentic drug prescriptions under false pretenses will often seek to deceive medical care providers by providing false symptoms of illnesses and injuries. These same individuals will eventually have to seek out new health care providers to deceive, because legitimate health care providers normally adhere to limits on the amount of drugs they prescribe to individuals. I further know based upon my training and experience that in addition to deceiving health care providers, individuals seeking to obtain prescription medication under false pretenses, often divert medication from pharmacies by manufacturing and utilizing forged or fictitious prescriptions in order to make them appear as if they were lawfully provided by a medical provider. I know that pharmacies routinely contact medical providers to authenticate prescriptions if alerted to suspicious prescriptions or suspicious persons seeking to fill prescriptions, sometimes faxing a copy of the prescription for authentication purposes. I also know based upon past investigations that members of police agencies more often than not will request that a medical care provider corroborate a suspected forged prescription, when conducting an investigation, sometimes faxing a copy of the prescription for authentication purposes.

18. I have reviewed an officer's witness statement, written by Patrol Officer Gregory Tainsh of the East Providence, Rhode Island Police Department. According to Officer Tainsh's witness statement, the following occurred: Officer Tainsh responded to a complaint at CVS Pharmacy, located at 583 Taunton Avenue, East Providence, Rhode Island on April 27, 2004. While at the CVS, the manager reported that the pharmacist on

duty received a prescription he believed to be fraudulent. The manager further stated that a customer of the pharmacy named James Barsoum came to the pharmacy and requested a copy of a past prescription of his that had been written by Doctor Michael P. Mariorenzi for thirty 20 milligram tablets of OxyContin. The manager reported that a copy of the prescription was provided to Barsoum and marked "copy." The manager further reported that a short time later, an unidentified male arrived with a prescription written for "Nazira Monofar," (whom my investigation has determined, as further described below, shares the same last name of James Barsoum's mother, Shamiram Monofar) for 80 milligrams of OxyContin written on a prescription from doctor Mariorenzi. The pharmacist on duty believed the prescription to be a forgery and told the unidentified individual that he needed to verify the prescription with the doctor. The unidentified male requested that the pharmacist return the prescription and the pharmacist refused. The unidentified male then stated that the prescription was forged and left the building. The manager reported that she contacted Dr. Mariorenzi's office, which confirmed that the prescription was forged. No one was charged as a result of the incident.

19. I have spoken with Special Agent Corte Burke of the U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, regarding James Barsoum. According to agent Burke, Barsoum is a Lebanese national and resident alien of the United States. I have reviewed immigration documents provided by agent Burke that reveal the maiden name of Barsoum's mother is Shamiram Monofar. Additionally, those documents identify Constantine Barsoum as the father of James Barsoum.

20. I have requested and reviewed information from the Electronic Data Transfer (EDT) system, maintained by the State of Rhode Island, Department of Health. The EDT systems purpose is to electronically monitor all schedule II and schedule III prescriptions written in the State of Rhode Island. As a result of my review of the EDT records, I have identified certain prescriptions that appeared to warrant further review.

21. For example, I have reviewed a prescription for Oxycodone allegedly issued to Constantine Barsoum by Doctor Mariorenzi that was filled at Brook's Pharmacy in Providence, RI. That document also identified a prescription for the drug Hydrocodone allegedly prescribed to Nazira Monofar by Doctor Mariorenzi and filled at Central Drug Incorporated Pharmacy located in Central Falls, Rhode Island. I have been advised by the office of Doctor Mariorenzi that neither Constantine Barsoum nor Nazira Monofar were patients of that office.

22. I have reviewed a comprehensive analysis comprised of information provided by the following pharmacies: Harding Pharmacy, Town and Country Pharmacy, Walgreen's Drug Store, Brook's Pharmacy, Town and Country Pharmacy, CVS Pharmacy, Miller's of Wyckoff Pharmacy, Rite Aid Pharmacy, Shoprite Pharmacy, and Central Drug Pharmacy. The identified pharmacies provided documents identifying prescriptions obtained by individuals, including prescriptions for OxyContin, purportedly written by Dr. Mariorenzi, whose identities all appear to tie back to James Barsoum. These identities include James Barsoum, Julianne Barsoum, Antoine Jabaly, Issa Azar, Julie Ayaz A/K/A Julie Azar-Ayaz, Rachel Araz, Constantine Barsoum, and Nazira Monofar. Dr. Mariorenzi has advised law enforcement that, other than James Barsoum, none of these individuals were ever patients of Orthopedic Associates Inc.

23. As part of this investigation I have conducted numerous Lexis-Nexis computer queries. (Lexis-Nexis provides a public records on-line service to include access to information from states about real and personal property assets, uniform commercial code liens, Secretary of State Corporation filings, verdicts and settlements and court indices and dockets). Those queries have revealed the following:

a) Julianne Barsoum is identified as being associated with 47 Hawes Street, Central Falls, RI. That address is also the former residence of James Barsoum.

b) Antoine Jabaly is identified as being an associate of James Barsoum. Additionally, Jabaly is associated with 1003 Crystal Lake Terrace, Franklin Lakes, New Jersey, an address provided by James Barsoum to probation officials in New Jersey as a former address of Barsoum's.

c) Issa Azar is listed as an owner of 110 Thackery Road, Oakland, New Jersey. My investigation has determined that 110 Thackery Road, Oakland, New Jersey, is the current residence of James Barsoum.

24. As discussed above at paragraph 12, Julie Ayaz is identified by James Barsoum, in a statement made by Barsoum to the Ridgewood, New Jersey Police Department, as an individual whose name was utilized in an attempt by Barsoum, to pass a fraudulent prescription for OxyContin allegedly written by Doctor Mariorenzi.

25. As discussed above at paragraph 12, Rachel Araz is also identified by James Barsoum, in a statement made by Barsoum to the Ridgewood, New Jersey Police Department, as an individual whose name was utilized in an attempt by Barsoum, to pass a fraudulent prescription for OxyContin allegedly written by Doctor Mariorenzi.

26. In summary, the analysis revealed that between January 6, 2004 and March 6, 2005, the above indicated identities have reportedly received over thirty-five hundred (3,500), forty (40) or eighty (80) milligram tablets of Oxycodone, a schedule II controlled substance. In addition, as described above, James Barsoum has caused the cost of certain of the prescriptions to be submitted to Blue Cross/Blue Shield.

27. Based on the above information, there is probable cause to believe that James Barsoum has committed the following offenses: (1) Causing the misbranding of a drug in violation of 21 U.S.C. Section 331 (k); (2) the fraudulent receipt of the prescription drug Oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. § 843; and, (3) the defrauding of a health care benefit program in violation of 18 U.S.C. § 1347.

Jason Simonian

Jason Simonian, Special Agent
Food and Drug Administration
Office of Criminal Investigation

Subscribed and sworn to before
me this 28th day of November, 2005
at Providence, Rhode Island.

LINCOLN D. ALMOND
United States Magistrate Judge